**SITES, Plaintiff, v. ATLAS POWDER COMPANY et, Defendants.**

Common Pleas Court, Muskingum County.

No. 38916.   Decided July 26, 1955.

Graham, Graham, Gottlieb & Johnston, Zanesville, for plaintiff.

Meyer, Johnson & Kincaid, Zanesville, Robert P. Barnett, Wilmington, Deleware, for defendant Atlas Powder.

Knepper, White, Richards, Miller & Roberts, Columbus, Donald P. Jones, Zanesville, for defendant Ohio Pipe Line Construction Co.

Pugh, Knapp & Miller, Zanesville, Kenneth Hampton, Columbus, for defendant Ohio Fuel Gas Company.

## OPINION

By CROSSLAND, J:

The pleadings herein consist of the amended petition, answers of each above named defendant company and plaintiff's reply to the answer of defendant The Atlas Powder Company.

A written stipulation of the parties agrees that residence property of the plaintiff was damaged in the sum of $1800.00 as the result of an explosion, which occurred October 28, 1952, in the partial creation of a ditch at the bottom of the Muskingum River in Zanesville, intended to take pipe to be laid by defendant The Ohio Pipe Line Construction Company for defendant The Ohio Fuel Gas Company.

A jury was waived and the cause submitted to the Court for determination.

Both pre-trial and post trial briefs were submitted by all the parties, ably and exhaustively analyzing the evidence and setting forth respective views of applicable law.

For the purpose of convenience the Court will adopt plaintiff's suggestion of referring to each named defendant as respectively Powder Company, Construction Company and Gas Company.

Plaintiff's amended petition avers that the Gas Company in order to construct a pipe line across said river procured the Powder Company and Construction Company to that end, further knowing that use of high powered explosives would be required; that defendant companies knew or should have known that such use would result in an extreme concussion; and that on said 28th day of October, 1952, the Powder Company and Construction Company, being engaged in the construction of said pipe line, used high powered explosives, resulting in a blast and explosion of intense power, with the knowledge and assent of the Gas Company.

The Powder Company alleged

"that on October 27th and 28th, 1952, it loaned some of its employees, free of charge, to the defendant, The Ohio Pipe Line Construction Company, to assist The Ohio Pipe Line Construction Company with the performance of certain blasting work it was doing in the Muskingum River at Zanesville, Ohio. That said employees at all times mentioned in plaintiff's petition were under the sole control and direction and the employees of the Ohio Pipe Line Construction Company."

Each defendant company denied negligence and plaintiff denied the quoted affirmative allegations of The Powder Company.

At the outset, the Court overrules objection of The Construction Company to admission into evidence of Exhibits "1" and "1-A" of The Powder Company, for consideration of their weight and effect and the same are thereby a part of the evidence herein. Such admission into evidence and exception thereto in behalf of The Construction Company shall be noted in the record by the court reporter.

Also in evidence is a written contract entered into October 1, 1952, between the Gas Company and Construction Company stating that:

"the Company (Gas) desires to lay approximately 1,100 feet of 12" medium pressure line replacing the existing 8" medium pressure line from a point approximately 377 feet west of the W. & L. E. Railroad eastward under the W. & L. E. Railroad, the Muskingum River, the Pennsylvania Railroad and B. & O. Railroad to the existing 8" medium pressure line in Underwood Street in Zanesville, Ohio."

Among express undertakings of the Gas Company were to provide all rights of way and crossing permits and to furnish an authorized representative to the end that all contracted requirements shall be promptly and properly interpreted and work performed by the Construction Company shall be in accordance with the meaning and intent of said agreement.

Among express undertakings of the Construction Company were that it was to start work not later than October 15, 1952, and do everything necessary to complete the line for delivery to the Gas Company by November 10, 1952; to furnish all supervision, labor, tools, equipment and other facilities and all incidental supplies, including explosives; to employ only competent, experienced and skilled foremen, mechanics and workmen "to do the work contemplated hereunder" and "to have at all times a Superintendent on the work vested with full authority to represent it in prosecuting the work contemplated hereunder"; that the Construction Company "shall in all respects be deemed to be an independent contractor and shall indemnify and save harmless the Company (Gas) from all injury and damage of any kind to the property of the Company (Gas) or of any other Corporation or person, and from all claims for damages caused by the Contractor (Construction Company), its employees or agents, in the performance of this contract"; "to promptly and satisfactorily settle—for all damage claims of every nature, which it is obligated to pay hereunder"; "and that Contractor (Construction Company) shall not assign this agreement or sublet any of the work to be performed hereunder without written consent of Company." (Gas Company)

It is quite clear, contrary to allegations of the amended petition, that the Gas Company did not procure the Powder Company "to construct the aforesaid pipe line" and also that the Powder Company was not "engaged in the construction of said pipe line," at any time or in any respect, and to this extent plaintiff has failed to sustain her claim.

Any possible liability of the Powder Company to plaintiff is necessarily wholly dependent upon a legal concept of direct responsibility under such facts and circumstances of Powder Company causation as

would naturally, necessarily or probably result in the destruction of property. **(Louden v. The City of Cincinnati et al, 90 Oh St 144.)**

Proceeding from the premise of plaintiff's amended petition that the Gas Company procured construction of its pipe line in part by the Powder Company, the latter's engagement therefor, and the accompanying averment that in performance of its engagement pursuant to such procurement by the Gas Company the Powder Company used high powered explosives with resultant property damage to plaintiff, it is difficult to see how plaintiff can possibly prevail against the Powder Company, upon and under the pleadings.

Considering that plaintiff premises her claim against the Powder Company upon the proposition of procurement and engagement by and at the instance of the Gas Company, it is manifest from the latter's contract, dealings and conduct that it dealt solely with and relied wholly upon the Construction Company throughout, as well as that the latter accepted wholly and exclusively all undertakings and responsibility for construction, completion and delivery of said pipe line, subject only to the accompanying undertakings and approval of the Gas Company.

Plaintiff does allege, not only that the Gas Company procured the doing of the work by the Construction Company, and the latter's engagement therein, pursuant thereto, but also the former's knowledge and assent to the use therefor of high power explosives.

It is, therefore, equally clear that the Gas Company is directly charged by plaintiff with liability to her for its having procured the Construction Company to construct a pipe line, in the course of which the use of explosives admittedly caused damage to plaintiff's property to the amount of $1800:00, and for which, under the evidence, the Gas Company is liable to plaintiff in said sum, although indemnified therefor by the Construction Company under the terms of their said contract.

"Where the liability for injury is not predicated upon negligence but upon the performance of the very thing which the independent contractor was employed and expected to do, the employer is liable." (22 American Jurisprudence 183, Sec. 55.)

"Although a principal is not liable as for negligence for injuries caused by an independent contractor, a power company which delegated to such a contractor the work of blasting the bed of a river in constructing its dam, an inherently dangerous operation, with resultant injury to an owner of realty, was liable, as the power company's liability did not rest on negligence, and it could not escape by delegation." (Watson v. Mississippi River Power Company, 156 N. W., 188.)

Such liability of the Gas Company in this case is founded upon a public policy, which declines to relieve from liability to an injured third person one contracting or arranging for the use by another of an inherently dangerous instrumentality, quite apart from and without any question or issue of negligence either in the procurement or the performance. **(City of Tiffin v. McCormack et al, 34 Oh St 638.)**

Upon the evidence, under the pleadings, plaintiff is entitled to recover damages in the sum of $1800.00 from defendants The Ohio Pipe Line Construction Company and The Ohio Fuel Gas Company, for property injury proximately and naturally resulting from use of explosives, October 28, 1952, and judgment is given plaintiff against each.

In arriving at its foregoing conclusion the Court applies the same principle of public policy, invoked against the Gas Company by plaintiff in her amended petition, to the fact and circumstance that the Construction Company admittedly was engaged in the fulfillment of its contractual obligation to the Gas Company and thereby also became directly responsible for the fact that Atlas 75% gelatin in the amount of 8900 pounds was used in blasting the Muskingum River bottom for part of the ditch in which to place the 12" pipe line, which the Construction Company was being paid by the Gas Company to construct at that time.

It is entirely illogical, as well as contrary to authority, for the Construction Company to expect to be relieved of liability to a third person as a result of its participation in the execution of its own contract and, at the same time, not relieve from such liability the party, Gas Company, who contracted to have the work done; which latter company in fact did not physically participate at all in any of the actual construction work, at least in any relevant respect.

The doctrine of third person recourse for explosion damages lies in not depriving the injured third person of a right of action regardless of contracted restrictions and limitations on the part of the contracting parties,—not in canceling, disregarding or lessening the undertakings and obligations assumed in and imposed by such contract.

Accordingly, the only question, if any remaining, relates to the mildly suggested and very vigorously asserted claims respectively of the two corporate defendants already adjudged liable, Gas Company and Construction Company, that the Powder Company is altogether liable in their stead.

While the Court believes that plaintiff's failure to make a case against the Powder Company under and pursuant to her amended petition, fully disposes of that question, as previously indicated, it would be an unworthy recognition of the very considerable, thorough and skillful presentation of the matter by respective counsel for the parties, particularly for defendants Powder Company and Construction Company, for the Court not to address itself somewhat to the aspect of liability which defendants Construction Company and Gas Company, not plaintiff, seek to impose upon defendant Powder Company in this case.

First, Plaintiff's claim is not predicated upon negligence and the Court neither assumes nor concludes that there was necessarily negligence on anyone's part. Furthermore, in order justly to consider a charge of negligence, claimed only by defendant Construction Company in its argument of the case, it is necessary to view the situation prospectively as it then presented itself to the parties present. There is no evidence whatever that says or infers that 8900 pounds of dynamite as spaced and placed on October 28, 1952, was in and of itself negligence as compared with the 1000 pounds of the previous day as it was spaced and placed. Certainly, there was no protestation whatever by anyone present, particularly accredited representatives of defendants Gas Company and Construction Company, in advance of the detonation, with respect to any problem or question of the safety of any third person's property. It would seem now to be established here from that particular experience of October 28, 1952, that any such future detonation, if

similarly resulting, might be said to be negligence by reason of such previous local experience. This Court cannot say and frankly does not know of its own knowledge and experience previous to October 28, 1952, in the total absence of evidence, whether the quantity of dynamite used, or its placement, or its spacing, or the manner of its detonation, or anything else of the numerous factors involved, done or omitted, separately, collectively, or otherwise, constituted anyone's or company's actual negligence. Hence, the Court cannot find or conclude negligence on the part of any defendant, even though the judge of this court, as a local citizen whose residence property was perceptibly shaken by the concussion, takes this occasion and opportunity to express emphatic disapproval of anyone ever again obtaining, granting or utilizing any such permission locally, in the light of the experience of October 28, 1952, **after** it happened.

The within action is predicated upon the results that naturally followed from the detonation of an explosive substance, because it exploded and thereby proximately produced damage to plaintiff's house. As to the demarcation point of quantity, placement, spacing, manner of detonation or other man-made factors, at which damage might have been less or nil, or not, the Court can and does say only that there should be no Zanesville river dynamiting whatever hereafter.

Property damage is not, ipso facto, proof of negligence, which is at least part of the reason for the Ohio rule. Conversely, absence of property damage does not in itself establish due care.

As to the Powder Company's Exhibits 1 and 1-A, the Court does not believe that it is required to determine their effect or lack of effect in this case in order to determine respective company liability, as they are an issue solely between the two companies, Powder and Construction, and while they could constitute an interesting academic discussion, this Court believes that in this case they are in no way relevant to the plaintiff's cause of action, either under the pleadings or upon the evidence. As a mere expression of opinion, unrelated to the facts and circumstances herein, if the Powder Company was otherwise found and considered to be an independent party participant in creating a damaging explosion it would seem to this Court that a rule of sound public policy would preclude excusing it from liability merely because of a written agreement with another company. At the same time, its contents, voluntarily subscribed to by accredited representatives of such other company, would seem to deprive the latter of any recourse for recoupment or contribution.

In so far as consideration to the Construction Company is concerned, it received the technical services of the Powder Company, free of charge, having already agreed to buy said company's 75% gelatin at a quoted price for it alone, and in purchasing explosives from the Powder Company it was also thereby enabled to perform its contract with the Gas Company at an agreed price to it, the Construction Company, of $14,400, said contract providing that:

"For the completion of the work as outlined herein, the Contractor (Construction Company) will be paid:

"The sum of $14,400 for the **complete** job, which includes **all** operations such as **trenching**, welding, coating, installing river weights, boring, backfilling, making tie-ins, and final clean-up."

Bearing in mind that the Construction Company was prohibited by its contract, which was the sole and whole occasion of its presence and undertaking, from assigning or subletting said contract or any part of it to any one without written consent of the Gas Company, it is hardly in a position to say that it operated on the job in any respect through any one else; the practical, if not legal, effect of which is, if not to make other persons present and participating its own employees for the purpose it was then furthering in its own interest and behalf, then certainly at least to make either them or their employer its agents or agent.

There is no doubt or equivocation about the fact that certain employees of the Powder Company were present, both sales and technical representatives, and the Court would be extremely naive to believe other than that they were present primarily in the interest of their employer to help promote its good will and potential future sales. But this particular sale had already been made and the technical services of the Powder Company are not shown to have been exacted or promised as a consideration of said sale or as any part of an agreement relating thereto. Whether the expectation of any such service actually induced or contributed to induce the instant sale of Powder Company's product is not shown, merely evidence that it was elsewhere extensively advertised as available to its customers. In any event, obvious election of the Construction Company to avail itself of technical assistance offered by the Powder Company upon the latter's terms and conditions was entirely its own responsibility, in the complete absence of any evidence of malevolent motivation on the part of the Powder Company.

The situation then existing as it presents itself most clearly to the Court, from all the evidence, with respect to the three defendant companies, is that, giving full credit and good faith to the Construction Company in the performance and fulfillment of its contracted undertaking with the Gas Company, having purchased from the Powder Company explosives it needed for its "trenching" obligation to the Gas Company, of which the latter was fully aware and expected to be exploded in order to have its 1,100 feet of 12" medium pressure line completed for delivery to it by November 10, 1952, the Construction Company, desiring to avail itself of technical assistance offered by the Powder Company, impliedly made the latter its agent upon that particular occasion for its own purpose of "trenching" the river bottom in executing performance in that respect of its contractual undertaking with the Gas Company. Plaintiff's property was damaged while defendant Construction Company was executing performance of its contract to defendant Gas Company, in which defendant Powder Company had and could have had no part, excepting only as a possible agent of defendant Construction Company, in the latter's interest and behalf under the latter's said contract, at the most.

Journal Entry may be prepared and submitted to opposing counsel by plaintiff's counsel, finding for plaintiff against defendants The Ohio Pipe Line Construction Company and The Ohio Fuel Gas Company in the sum of $1800.00, and all costs herein, dismissing defendant The Atlas Powder Company; with judgment accordingly.

Exceptions granted defendants The Ohio Pipe Line Construction Company and The Ohio Fuel Gas Company.